## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LEWIS OLIVER TATE, | ) | |
| ID # 017700627, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:15-CV-1722-D-BH |
| | ) | |
| LORIE DAVIS, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

Lewis Oliver Tate (Petitioner) challenges his conviction for aggravated robbery. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

**A.    State Proceedings**

On May 4, 2011, the State indicted Petitioner for aggravated robbery in Cause No. F11-53715. (Doc. 11-2 at 8.)[1] He pleaded not guilty and was tried before a jury in the 204th Judicial District Court of Dallas County, Texas, on February 14-16, 2012. (Doc. 11-3 at 6-8.)

*1.    Pretrial hearing*

A pretrial hearing was held on September 8, 2011, concerning Petitioner's dissatisfaction with counsel's representation. (Doc. 11-5.) Counsel stated that Petitioner claimed that Joel Grandberry had robbed him on March 25, 2011, five days before the robbery of Grandberry for

---

[1]Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

which Petitioner had been indicted. (*Id*. at 12, 16.) Petitioner wanted counsel to obtain surveillance videos of the March 25th robbery, but he had told Petitioner that the surveillance videos were only kept for 24 hours and no longer existed. (*Id*. at 12.) Counsel told Petitioner that Grandberry denied knowing him, but he would be subject to cross-examination. (*Id*. at 17.) Although Petitioner could testify at trial about the March 25th robbery, counsel recognized that it would not be much of a defense against the March 30th robbery. (*Id*.) The State had provided counsel with the police report of the March 25th robbery. (*Id*. at 24-25.) Petitioner did not tell the investigating officers any information about who had robbed him. (*Id*. at 27.) According to the incident report, he said he would handle it himself and that he had guns. (*Id*. at 27-28.)[2]

Petitioner's motion to testify free from impeachment with prior convictions was also considered at the pretrial hearing. (*Id*. at 39-44.) The court said that the matter of impeachment would be decided when it arose at trial. (*Id*. at 44.)

### 2.    *Trial*

At trial, Grandberry testified that he stopped at a convenience store on the night of March 30, 2011. (Doc. 11-8 at 23, 26, 28.) A man exited a small Chevrolet car, approached him in the parking lot, pointed a mini assault rifle at him, and demanded money. (*Id*. at 28-29.) The man made him lie on the ground, searched his pockets, and took his wallet, cell phone, keys, cigarettes, lighter, and pocket knife. (*Id*. at 31.) The man threw the lighter and pocket knife in a nearby trash can and told him to leave. (*Id*. at 32-33.) Grandberry saw a police car about a block away, ran to it, and told the officer what just happened. (*Id*. at 34, 64.) The officer pulled up behind the robber as he was driving away and turned on his lights, but the robber did not stop, and the officer pursued him. (*Id*.

---

[2]Counsel's affidavit in support of the response to Petitioner's state habeas application states that he hired an investigator to identify any links between Petitioner and Grandberry, but no connections were discovered. (Doc. 11-15 at 95-96.)

at 37-38.)  Other police officers arrived and took Grandberry to the police station where he gave a written statement.  (*Id*. at 39.)  The police returned his wallet, keys, and cell phone, but $38 was missing.  (*Id*. at 40.)  The next day, an officer returned his knife and lighter.  (*Id*. at 41, 48.)  Grandberry could not identify Petitioner in court.  (*Id*. at 35.)  The robber seemed thinner than Petitioner.  (*Id*. at 56.)  Grandberry had never seen the robber before, and he did not know Petitioner.  (*Id*. at 38, 57.)  On cross-examination, he testified that if someone were at the intersection of Malcolm X and Hatcher, they probably would not have been able to see the man pointing the gun at him because they were standing between two cars during the robbery.  (*Id*. at 61-62.)

Jong Hong, a clerk at the convenience store, heard someone scream "police" several times.  (*Id*. at 76.)  He saw a white sedan pull out of the parking lot and the police chasing it.  (*Id*. at 77.)  The store had a security video system, which was supposed to make recordings.  (*Id*. at 77-78.)  Hong did not know if there was any video recording of the robbery.  (*Id*. at 80, 87.)  Hong's boss, Sam Yoo, said something to him about recordings.  (*Id*. at 78.)  Yoo talked to the police and worked with them to examine the video footage.  (*Id*. at 85-86.)  Hong thought someone took the videotapes.  (*Id*. at 78.)  He could rewind and rewatch the video, but he did not know whether the video system was constantly recording.  (*Id*. at 87.)

The prosecutor advised the court that the State did not have the videos, and that he was unaware that there were any.  (*Id*. at 78-79.)  The court instructed the prosecutor to contact the detectives to determine if there were videos.  (*Id*.)  The prosecutor later informed the court that a detective called the store several times but was unable to retrieve any video recording.  (*Id*. at 86.)  The court told the prosecutor to look further into the matter.  (*Id*.)  The prosecutor later informed the Court that an investigator went to the store, but the store computer showed there was no video from

the time of the robbery.  (*Id*. at 113.)  The court again inquired about video of the robbery, and the

prosecutor said that the detective made numerous unsuccessful attempts to obtain the video.  (*Id*. at

133.)  The two officers who went to the crime scene never reviewed any videos.  (*Id*.)

Hong was recalled as a witness.  (*Id*. at 135.)  He could not recall whether police officers

viewed a store video after the robbery of Grandberry or after some other incident.  (*Id*. at 136.)  He

did not know whether the security cameras were connected to a computer that stored the video

images.  (*Id*. at 138.)  He understood that the video is recorded and stored somewhere, but he did

not know how long the recordings were kept.  (*Id*. at 139.)

Dallas Police Officer Jeff Hunter was on patrol on the night of the robbery.  (*Id*. at 89.)  He

was stopped at a traffic light at the intersection of Malcolm X and Hatcher.  (*Id*.)  He saw Petitioner

point an eighteen-inch long, hand-held assault rifle at Grandberry, and heard Petitioner say he would

shoot him.  (*Id*. at 89, 96.)   He turned on his police video camera, but it could not turn far enough

to the side to view the robbery.  (*Id*. at 92.) Grandberry ran to the police officer and said he had been

robbed.  (*Id*.)  Petitioner walked to his car, and Officer Hunter pulled up behind him and turned on

his lights, but Petitioner did not stop.  (*Id*. at 89-90.)  The police video showed Petitioner backing

out and the ensuing chase, which Officer Hunter described.  (*Id*. at 93, 98-103.)  When Petitioner

stopped, he sat in his car for 45 minutes.  (*Id*. at 103-04.)  Petitioner occasionally stuck one hand out

of the car, and the police did not know what he was doing with his other hand.  (*Id*. at 104.)  He was

reaching in the passenger seat and digging around.  (*Id*. at 107, 108-09.)  When Petitioner got out

of his car, the police recovered the assault rifle, which is a deadly weapon.  (*Id*. at 112.)  There was

a round jammed in the rifle's chamber, and the police did not know at what point he tried to shoot

it, "if he did at all."  (*Id*. at 104.)  The police officers assumed that he was trying to get that round

unjammed from the chamber and he was trying to create a situation where he would be killed by the police. (*Id*. at 105.) The officers also found Grandberry's wallet and cell phone. (*Id*. at 111.) Counsel cross-examined Officer Hunter about his precise location when he saw the robbery. (*Id*. at 115-19.) He said that although he could not identify Petitioner from having seen him when he pointed the gun at Grandberry because of the distance, he knew it was Petitioner who committed the robbery since he chased and caught him. (*Id*. at 124.) He saw the weapon during the robbery. (*Id*. at 126.) During the chase, he never lost sight of Petitioner. (*Id*. at 132.)

Officer Dustin Voels went to the store shortly after the robbery. (*Id*. at 148.) He spoke with Grandberry and retrieved the pocket knife from the trash can. (*Id*. at 151, 153.) He did not go inside the store, and he did not watch any video. (*Id*. at 151.) He noticed there were video cameras in front of the store, but he did not inquire about the camera system. (*Id*. at 160.)

Detective Raymond Bennett went to the crime scene that night and took photos. (*Id*. at 166, 168.) Usually, any inquiry about a video surveillance system is done by another officer or detective in a follow-up investigation. (*Id*. at 171-72.)

Officer Justin Thompson joined in the pursuit of Petitioner after the robbery. (*Id*. at 176.) His in-car video recorded the chase. (*Id*. at 178-79.) Petitioner stopped after about 12 minutes. (*Id*. at 177.) Officers told him to get out of his car, but he would not do so. (*Id*. at 180.) He eventually got out of the car after about 30 minutes. (*Id*. at 181.) Officer Thompson found a rifle under the passenger seat of Petitioner's car and an extra round on the floorboard. (*Id*. at 183.) He described it as a rifle that was also considered to be a pistol, because it did not have a stock. (*Id*. at 184, 190.) The rifle was loaded with a magazine that contained 15 rounds of ammunition. (*Id*. at 185, 188.) There was a bent round that was jammed in the chamber. (*Id*.) Officer Thompson was not a

firearms expert, but he had received firearms training.  (*Id*. at 190.)  The rifle was a deadly weapon. (*Id*. at 189.)

Officer Troy Allison also joined the chase, which lasted 7 to 10 minutes.  (*Id*. at 196-97.) He also recorded the chase with his in-car video camera.  (*Id*. at 198-99.)  Petitioner stopped, but he would not get out of the car for about 30-40 minutes.  (*Id*. at 199-200.)

Detective Reginald G. Jackson spoke with Grandberry after the robbery.  (*Id*. at 204-05.) The day after the offense, he attempted to obtain video from the store.  (*Id*. at 205.)  He went to the store four times and asked them to send him a copy of the video, but he never received anything. (*Id*. at 205-06.)  He was first told that the person at the store did not know how to work the equipment.  (*Id*. at 206.)  A later request for the video did not get a response.  (*Id*.)

Jason Bonham, an investigator with the Dallas County District Attorney's office, recently went to the store to obtain video of the robbery, but there was none.  (*Id*. at 210.)  Store personnel would not provide a phone number for the store manager.  (*Id*.)  He eventually discovered the phone number of the store manager, Sam Yoo, and spoke with him on the phone.  (*Id*. at 210.)  Yoo said that he watched a video of the robbery with a police officer on the night of the offense, but the system later deleted the video because the system purges every two to three weeks.  (*Id*. at 210-11, 212.)  Yoo said that the video showed a man with a gun rob another man.  (*Id*. at 211.)  Yoo would not testify.  (*Id*.)

Jose Felipe Vela, Jr., investigator for the defense, testified that the front of the store was 60 yards from where Officer Hunter said he was when he observed the robbery.  (*Id*. at 220.)  He admitted that it was possible to hear someone say something from that distance.  (*Id*. at 221.)  He inquired about video of the robbery, but no one from the store returned his call.  (*Id*.)

At the end of the State's case-in-chief, Petitioner testified outside of the jury's presence. (*Id.* at 212-13.) Counsel explained to him that he had a right to testify. (*Id.* at 214.) Counsel and the prosecutor stated, and the court ultimately held, that he could be impeached with a 2004 conviction for delivery of a controlled substance if he testified. (*Id.* at 214-16.) The court pointed out, and counsel explained, that other prior convictions could be admitted for rebuttal if his testimony opened the door for their admission. (*Id.* at 216.) Petitioner decided not to testify. (*Id.*)

The jury convicted Petitioner and sentenced him to 45 years' confinement.[3]

### 3.   *Post-conviction*

On appeal, the judgment was modified to show that Petitioner entered a plea of not true to two enhancement allegations, and that the jury found them true. As modified, the judgment was affirmed on appeal. *Tate v. State*, No. 05-12-00262-CR, 2013 WL 230213 (Tex. App. – Dallas Jan. 14, 2013). He did not file a petition for discretionary review. (Doc. 1 at 3.)

Petitioner's state habeas application, signed on October 21, 2013, was received by the state court on December 20, 2013. (Doc. 11-15 at 5, 39.) The application was denied without written order. (Doc. 11-14); *see Ex parte Tate*, WR-82,626-01 (Tex. Crim. App. Apr. 29, 2015).

### B.   <u>Substantive Claims</u>

Petitioner's habeas petition, received on May 19, 2015, contends that trial counsel was ineffective (ground 1) for:

    (a)  failing to properly investigate and prepare for an extraneous offense hearing;

    (b)  failing to properly investigate the alleged victim who claimed not to know Petitioner;
    (c)  failing to acquire a video of the robbery;

---

[3]Although the judgment states that the court assessed punishment (doc. 11-2 at 76), the sentence was assessed by the jury's verdict on punishment (doc. 11-2 at 75.) (Doc. 11-2 at 75, 76.)

(d)  failing to impeach or object to the false testimony of the complainant, Joel Grandberry;

(e)  failing to document the location where Officer Jeff Hunter claimed to have seen Tate commit the robbery;

(f)  failing to secure an expert witness to testify that Officer Hunter could not have heard anything from his location;

(g)  offering erroneous advice on the motion in limine about the admission of evidence of convictions and failing to preserve error regarding the motion in limine;

(h)  failing to request a reasonable doubt instruction regarding extraneous offenses;

(i)  allowing evidence that Petitioner was a felon in possession of a firearm;

(j)  allowing a police report to be read;

(k)  allowing the prosecutor to raise other criminal events during voir dire and the opening statement;

(l)  allowing Grandberry to testify that Petitioner was being chased by the police;

(m)  allowing Officer Hunter to testify that Petitioner was evading arrest;

(n)  allowing Officer Justin Thompson to testify that a rifle and magazine were found in Petitioner's car and that Petitioner evaded arrest;

(o)  allowing Officer Troy Allison to testify that Petitioner evaded arrest;

(p)  allowing Officer Hunter testimony to testify about what he believed Petitioner was doing or could have been doing while evading arrest; and

(q)  failing to object to Officer Thompson testifying as an expert witness.

(Doc. 1 at 6-9.)  His amended habeas petition, received on July 5, 2016, raises the following additional grounds of ineffective assistance of counsel:

(r)  failing to pursue a misidentification defense;

(s)  failing to interview Grandberry; and

(t)  failing to object to the identification procedure.

8

The amended petition also raises four additional claims: (2) the State withheld evidence regarding Grandberry's identification of Petitioner; (3) the procedure regarding Grandberry's identification of Petitioner was improper; (4) Grandberry falsely identified Petitioner; and (5) the evidence was insufficient to support the convictions. (Doc. 15 at 3-14.)

Respondent filed a response to the petition on July 17, 2015 (doc. 9), and a response to the amended petition on August 2, 2016 (doc. 18.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

9

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

 Section 2254(d)(2) concerns questions of fact.  *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  EXHAUSTION AND PROCEDURAL BAR

Respondent contends that Petitioner's identification and ineffective assistance claims in

his amended petition are unexhausted and procedurally barred.

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust under § 2254, he must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. A petitioner must also present his claims in a procedurally correct manner. *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.

The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred).

Petitioner did not raise the identification claims and related ineffective assistance claims now asserted in the amended petition either on appeal (*see* doc. 11-13) or in his state habeas application (*see* doc. 11-15). These claims are therefore unexhausted. He would be barred from raising these claims in a successive state habeas application, so his claims are also procedurally barred from

federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

In addition, Petitioner's claims that the State withheld evidence regarding Grandberry's identification of him, the procedure used for Grandberry's identification of Petitioner was improper, and Grandberry falsely identified Petitioner also lack merit. Grandberry could not identify Petitioner, so he did not make an in-court identification. (Doc. 11-8 at 35.) Immediately after the robbery, he told Officer Hunter what had happened. (*Id.* at 34.) He did not make an out-of-court identification of Petitioner through any identification procedure administered by the police. Petitioner has not shown that Grandberry misidentified him. Officer Hunter saw Petitioner and Grandberry, followed Petitioner, and Grandberry's property was in Petitioner's car. Petitioner has not shown that he is entitled to relief on these claims.

Likewise, as discussed more fully below, the identification ineffective assistance of counsel claims in the amended petition also lack merit.

### IV.  SUFFICIENCY OF THE EVIDENCE

Petitioner claims that the evidence was insufficient to support the conviction because the in-court and out-of-court identifications of him by Grandberry were inadmissible. (Doc. 15 at 4-5.)

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing

reasonable inferences from basic facts to ultimate facts. *Id.* Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

The evidence was sufficient to support the conviction. Officer Hunter saw the robbery and followed Petitioner until he stopped and was arrested, without losing sight of him. The rifle and Grandberry's property were in Petitioner's car.

Even if identifications should not have been admitted into evidence, they are considered when reviewing the sufficiency of the evidence. *See United States v. Cugno*, 255 F. App'x 5, 13 (5th Cir. 2007) (citing *United States v. Marshall*, 762 F.2d 419, 423 (5th Cir. 1985); *see also McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (in reviewing the sufficiency of the evidence, "'a reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously") (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)). Nor, as discussed more fully below, has he has shown that any identifications by Grandberry were inadmissible. Further, even without any identification of Petitioner by Grandberry, there was sufficient evidence to support the conviction. He has not shown that he is entitled to relief on this claim.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends trial counsel was ineffective for failing to properly investigate and

prepare for an extraneous offense hearing; failing to properly investigate the alleged victim who claimed not to know Petitioner; failing to acquire a video of the robbery; failing to impeach or object to the false testimony of the complainant, Joel Grandberry; failing to document the location where Officer Jeff Hunter claimed to have seen Tate commit the robbery; failing to secure an expert witness to testify that Officer Hunter could not have heard anything from his location; offering erroneous advice on the motion in limine about the admission of evidence of convictions and failing to preserve error regarding the motion in limine; allowing evidence that Petitioner was a felon in possession of a firearm; allowing a police report to be read; allowing the prosecutor to raise other criminal events during voir dire and the opening statement; allowing Grandberry to testify that Petitioner was being chased by the police; allowing Officer Hunter to testify that Petitioner was evading arrest; allowing Officer Justin Thompson to testify that a rifle and magazine were found in Petitioner's car and that Petitioner evaded arrest; allowing Officer Troy Allison to testify that Petitioner evaded arrest; allowing Officer Hunter testimony to testify about what he believed Petitioner was doing or could have been doing while evading arrest; failing to object to Officer Thompson testifying as an expert witness; failing to pursue a misidentification defense; failing to interview Grandberry; and failing to object to the identification procedure.

(Doc. 1 at 6-9; doc. 15 at 3-14.)

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective

assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain federal habeas relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

15

## A.   **Identification by Grandberry**

Petitioner contends that counsel should have pursued a misidentification defense and objected to the in-court and out-of-court identifications by Grandberry because the identification procedures were suggestive, Grandberry could not identify him in court, and Grandberry's description of the robber did not match Petitioner.

As noted, these claims are unexhausted and procedurally barred from federal habeas review. *See Nobles*, 127 F.3d at 423. They also lack merit for the same reasons as Petitioner's identification claims. Grandberry could not identify him in court, and there was no improper out-of-court identification to suppress. Petitioner does not identify any legal reason for objecting to Grandberry's testimony based on the fact that Grandberry thought that the robber looked thinner than Petitioner. He has also not shown prejudice, or that he is entitled to relief on these claims, and they should be denied.

## B.   **Hearing on Impeachment With Prior Convictions; Motion in Limine**

Petitioner asserts counsel did not investigate and was not prepared for the hearing on extraneous offenses. As a result, he was prevented from testifying. He also claims that counsel told him that all the prior convictions would be admitted into evidence, that he failed to tell him he had to testify to preserve error, and he failed to preserve error regarding a motion in limine for extraneous offense evidence. He cites to the pretrial hearing on impeachment with prior convictions.

The pretrial hearing addressed the State's ability to impeach him with prior convictions if he testified. The court stated that the matter would be decided when the issue arose at trial. (Doc. 11-5 at 44.) At trial, the court ruled that Petitioner could be impeached with a 2004 conviction for delivery of a controlled substance. (Doc. 11-8 at 214-16.) Counsel argued why prior convictions

16

other than the 2004 conviction could not be used for impeachment, and the court agreed that only the 2004 conviction could be so used. Petitioner does not assert that he could not have been impeached with the 2004 conviction. He was also told that he could be impeached with prior convictions if he opened the door with his testimony and he decided not to testify. (*Id*. at 216.) Petitioner does not suggest what counsel should have discovered through investigation, how he was unprepared, or what more he could have done regarding the potential for impeachment. Conclusory claims do not entitle Petitioner to relief. *See Woods*, 870 F.2d at 288 n.3.

As for Petitioner's claim regarding failure to preserve error regarding a motion in limine, this type of motion seeks to require the State to approach the bench and argue grounds for the admission of certain evidence before attempting to introduce such evidence. *See Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975). The court stated at the pretrial hearing that the impeachment would be resolved when it arose at trial. When Petitioner was deciding whether to testify, the court ruled on the admissibility of prior convictions for impeachment. The purpose of a motion in limine was therefore accomplished. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## C.    **Extraneous Offense Evidence; Reasonable Doubt Instruction**

Petitioner contends that counsel allowed or failed to object to extraneous offense evidence, including that he was a felon in possession of a firearm, that he was chased by the police and evaded arrest, and that a rifle and magazine were found in his car. He also asserts that counsel did not request an instruction on proof beyond a reasonable doubt for the extraneous offenses evidence.

There was no mention to the jury that Petitioner was a convicted felon in either voir dire, the State's opening argument, or the State's presentation of evidence at the guilt phase. That matter was

discussed in a pretrial hearing.  (Doc. 11-6.)

> Evidence of another crime, wrong, or act also may be admissible as same-transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, ..., of any one of them cannot be given without showing the others."  *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)).  The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense.  *Id.*

*Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).  Evidence that he was chased by the police and would not stop was admissible.  *See id.* (evidence of flight is admissible).  Flight from an aggravated robbery is not an extraneous offense – it is part of the robbery.  *See Harper v. State*, 930 S.W.2d 625, 630 (Tex. App. – Houston [1st Dist.] 1996).  Similarly, he has not shown that the possession of the weapon used in the robbery was an extraneous offense.  It was part of the robbery.  The evidence of flight and subsequent arrest and the recovery of the rifle and ammunition from Petitioner's car was evidence that connected him to the robbery, and it was not objectionable as extraneous offense evidence.  *See Camacho v. State*, 864 S.W.2d 524, 535 (Tex. Crim. App. 1993) ("Circumstances of the offense which tend to prove the allegations of the indictment are not extraneous offenses.").

When an extraneous offense is admitted at the guilt phase, if requested the court should give an instruction that the jury cannot use the extraneous offense unless the jury believes beyond a reasonable doubt that the defendant committed the extraneous offense.  *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007).  The evidence of flight and the recovery of the rifle from Petitioner's care was not extraneous offense evidence, so an instruction regarding extraneous offenses was not required.  *See Camacho*, 864 S.W.2d at 535.  He has not shown that the state court's rejection of this claim was unreasonable.

18

**D.**       **Investigation of Grandberry; Video of Alleged March 25th Robbery; False Testimony**

Petitioner contends that counsel failed to properly investigate Grandberry's claim that he did not to know him, failed to acquire a video of Grandberry robbing him on March 25th, and failed to object to or impeach his false testimony.

Petitioner does not show that there was a video of the March 25th robbery, that counsel could have discovered any such video, or that the content of any video would have assisted in the defense of the March 30th robbery. Counsel hired an investigator to look into the matter, but the investigator was unable to find evidence to support Petitioner's claim that Grandberry robbed him on March 25th. (Doc. 11-15 at 95-96.) Counsel stated at the pretrial hearing that any video of the March 25th robbery would have been deleted after 24 hours. (Doc. 11-5 at 12.) Petitioner has not shown that Grandberry's testimony was false, that there was any basis for an objection, or that there was any means for impeachment. He has not shown that the state court's rejection of this claim was unreasonable.

**E.**       **Police Report**

Petitioner contends counsel failed to object to the reading of a police report into evidence. He cites to a pretrial hearing; the police report was not read into evidence at trial. He has not shown that the state court's rejection of this claim was unreasonable.

**F.**       **Officer Hunter**

Petitioner contends that counsel failed to show that Officer Hunter could not have seen the robbery from his location, and that he failed to obtain an expert witness to show that Officer Hunter could not have heard the robber during the robbery. He also claims that counsel failed to object to Officer Hunter's testimony regarding what he may have been doing during the chase.

### 1.    *Location*

The defense investigator testified that Officer Hunter was 60 yards from the offense.  (Doc. 11-8 at 220.)  Grandberry testified that anyone at Officer Hunter's location at the intersection of Malcolm X and Hatcher probably would not have been able to see the robber pointing the gun at him because they were standing between two cars during the robbery.  (*Id*. at 61-62.)  Counsel cross-examined Officer Hunter about his location and what he saw.  (*Id*. at 115-19.)  Petitioner does not allege what else counsel should have done to document Officer Hunter's location.

### 2.    *Expert*

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative.  *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009).  To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Day v. Quarterman*, 566 F.3d at 538.

Petitioner has not identified any expert witness, shown the substance of the testimony of any expert, or shown that such testimony would have been favorable.  *See Day v. Quarterman*, 566 F.3d at 538.

### 3.    *Petitioner's Actions*

Officer Hunter testified that the officers assumed Petitioner was driving around a neighborhood during the chase to find a place where he could get out of the car and run.  (Doc. 11-8 at 101.)  He believed that other officers were blocking off streets during the chase.  (*Id*. at 102.)  At

one point during the chase Petitioner turned onto a narrow road. He thought that Petitioner would either have to get out of the car and run, or that they would have a shoot-out. (*Id*. at 103.) Petitioner occasionally stuck one hand out of the car, and the police did not know what he was doing with his other hand. (*Id*. at 104.) There was a round jammed in the rifle's chamber, and the police did not know at what point he tried to shoot it, "if he did at all." (*Id*. at 104.)

Officer Hunter was testifying about his opinion and concerns during the chase. Petitioner does not allege any specific objections that counsel should have made or how he was prejudiced by counsel's failure to object. His conclusory statements do not show that the state court's rejection of these claims was unreasonable.

## G.    __Officer Thompson__

Petitioner contends that counsel failed to object to Officer Thompson's lack of qualifications to testify as a firearms expert. Officer Thompson testified that he was not an expert, but he had training in firearms. (*Id*. at 190.) A police officer can testify about opinions based on personal training and experience without being qualified as an expert. *See Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App. – Austin 2007). A police officer can testify as a lay witness that an object was a deadly weapon. *See Barnett v. State*, 344 S.W.3d 6, 19 (Tex. App. – Texarkana 2011). Petitioner has not shown that Officer Thompson was incapable as a lay witness to testify that the rifle was a deadly weapon, or that the state court's rejection of this claim was unreasonable.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 3rd day of April, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE